Civil Case No- 3:20-cv-06330-FLW

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

---

### BEFORE THE HONORABLE FREDA L. WOLFSON, CHIEF JUDGE

In re Laurence A. Hecker, Debtor, Case 10-24143-CMG

---

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEW JERSEY

### BRIEF OF APPELLEE BUNCE ATKINSON, TRUSTEE

Bunce D. Atkinson, Esq.

The Kelly Firm, P.C.

1011 Highway 71

Spring Lake, N.J. 07762

Tel: 732- 449-0525

Fax: 732-449-0592

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES…………………………………    3

STATEMENT OF APPELLATE JURISDICTION……….    4

STATEMENT OF THE ISSUE……………………………    4

STANDARD  OF REVIEW…………………………………    5

STATEMENT OF THE CASE ……………………………    6

    I.       Statutory Framework ………………………….    6

    II.     Statement of Facts ……………………………..    7

SUMMARY OF ARGUMENT……………………………….    14

ARGUMENT…………………………………………………    14

CONCLUSION……………………………………………...    23

CERTICATE OF COMPLIANCE WITH FED R. BANKR. P. 8015(a)(7)(B)(i)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

I.<u>CASES</u>                                                                PAGE

See <u>A.C. Capital</u> <u>Management, LLC</u> 450 ( 1, (67, App. Div. 2017).          22

<u>Anderson v City of Bessemer City</u> 470 <u>U.S</u>. 564, (1985)                 5

<u>Barton v. Barbour</u> 104 <u>U.S.</u> 126 (1881)                                14

<u>Fellheimer, Eichen & Braverman P.C. v Charter Techs., Inc,</u> 57 <u>F.3d</u> 1215.

(3rd Cir 1995)                                                            5

<u>(Ferrara & Hantman v Alvarez (In re Engel)</u> 124 <u>F.3d</u> 567 (3rd Cir 1997)   5

<u>Harlow v. Fitzgerald,</u> 457 <u>U.S.</u> 800 (1982)                             17

<u>In Re Vista Care Group v. Schwab</u> 678 <u>F.3d</u> 218 (3rd Cir. 2012)     14,15,16,17

<u>J & S Properties, LLC, Debtor, Phoenician Mediterranean Villa, LLC v.</u>

<u>Swope,</u> 72 <u>F.3d</u>, 138 (3rd Cir. 2017).                              18,19

<u>Pearson v. Callahan</u> 555 U.S. 223 (2009)                                  17,18

<u>Printing</u> <u>Mart-Morristown v. Sharp Electronics Corp.</u>, 116 <u>N.J</u>. 739 (1989)   22,23

<u>Prosser v .Gerber (In re Prosser)</u>, 777 <u>F.3d</u> 154, (3rd Cir 2015)   5

<u>Vastano v. Algeir</u>, 178 <u>N.J.</u> 230, 236                                22

II. STATUTES

<u>N.J.S.A</u>.14A-1                                                            22

11 <u>U.S.C.</u> 521(a)(1)                                                      20,21

11 <u>U.S.C</u>. 521(e)(2)(A                                                     6

11 <u>U.S.C</u>. 704(a)                                                         6,19,20

11 <u>U.S.C</u> 707(b)(1)(A)                                                     6,

28 <u>U.S.C</u>. 158(a)(1)                                                       4

III  RULES

<u>Fed. R. Bankr. P</u>. 8002(a                                                 4,20

## STATEMENT OF APPELLATE JURISDICTION

The United States Bankruptcy Court for the District of New Jersey

had jurisdiction over the 2010 Chapter 7 bankruptcy case of Laurence A. Hecker, hereinafter "Hecker or the Debtor", which was closed in March 2011, as well as the post closing motion filed by the Appellant in 2020 to seeking to reopen the case and for authorization to institute an action in the Superior Court of New Jersey against the Trustee. The Bankruptcy Court's order entered April 3, 2020 reopening the case and denying the Appellant leave to pursue claims against the Trustee in the New Jersey Superior Court and its order entered May 6, 2020 denying the motion for reconsideration were appealable when entered.

The Appellant timely filed notices of appeal under 28 U.S.C. 158(a)(1) and Fed. R. Bankr. P. 8002(a).

4

## STATEMENT OF THE ISSUE

Did the Bankruptcy Court abuse its discretion in denying the motion filed by Steven D'Agostino, hereinafter "D'Agostino" seeking authorization to pursue a claim in the Superior Court of New Jersey against Bunce Atkinson, the Chapter 7 trustee, hereinafter "Atkinson or the Trustee" in the 2010 no asset Chapter 7 case that was closed asset in March 2011.

## STANDARD OF REVIEW

Findings of fact by the Bankruptcy Court are reviewed solely for clear error, its legal conclusions are reviewed de novo, and its exercise of discretion is reviewed for abuse. (Ferrara & Hantman v Alvarez (In re Engel) 124 F.3d 567, 571 (3rd Cir 1997). The Bankruptcy Court's factual findings are reversible if they are clearly erroneous. Findings of fact by the Bankruptcy Court supported by the record before it are not clearly erroneous even if the record could support a different conclusion. Anderson v City of Bessemer City 470 U.S. 564, 573-74 (1985) (internal quotation omitted). In Bessemer, the Court stated, "Where there are to permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at p.574. A finding is clearly erroneous only if it "is completely devoid of minimum evidentiary support displaying a hue of credibility or bears no rational relationship to the supportive evidentiary data". Fellheimer, Eichen & Braverman P.C. v Charter Techs., Inc, 57 F.3d 1215, 1223.

(3rd Cir 1995), (internal quotation omitted).

The Bankruptcy Court's decision denying D'Agostino's motion to pursue claims against Atkinson in the Superior Court of New Jersey for the Trustee's conduct in the 2010 "no asset" bankruptcy case of Hecker is reviewed for an abuse of discretion. In <u>Prosser v .Gerber (In re Prosser)</u>, 777 <u>F.3d</u> 154,161 (3rd Cir 2015), the Court stated that if the "bases its opinion on a clearly erroneous fact, an erroneous legal conclusion, or an improper application of law to fact", only then is there an abuse of discretion by the Court.

## STATEMENT OF THE CASE

### I.    Statutory Framework

Hecker filed a petition for relief under Chapter 7 of the Bankruptcy Code. The duties of a debtor are set forth in 11 U.S.C. 521(a). They include filing a list of creditors, schedules of assets and liabilities, a schedule of current income and expenses, and a statement of financial affairs. The debtor is also required to provide the Trustee with a copy of debtor's Federal Income Tax Return. 11 <u>U.S.C.</u> 521(e)(2)(A). The statutory duties of a Chapter 7 Trustee's duties are set forth in 11 <u>U.S.C.</u> 704(a). They include collecting and reducing to money the property of the estate and closing it as expeditiously as is compatible with parties in interest, being accountable for property received, investigating the financial affairs of the debtor, and making a final report. If the debtor is an individual, the United States Trustee shall review all materials filed and not later than 10 days after the first meeting of creditors, file with the court a statement as to whether the debtor's case

should be presumed to be an abuse under 11 U.S.C. 707(b)(1)(A), and thereafter file a motion to dismiss or convert under 11 U.S.C. 707(b). 11 U.S.C. 707 (b) applies only in  cases in which the debtor's debts are primarily consumer debts.


II.                          **STATEMENT OF FACTS**

       Hecker, filed a petition under Chapter 7 of the United States Bankruptcy Code on May 7, 2010. D'Agostino was not originally listed as a creditor in the Debtor's petition.  On the same date, the Bankruptcy Court Clerk, hereinafter the "Clerk" in accordance with its duties filed a Notice of Missing Schedules.  The Debtor filed a motion to extend time to file the missing Schedules, which order was granted by the Court on May 24, 2010.  The notice of the filing of the case was sent by the Clerk. Atkinson was appointed as the Trustee on May 10, 2010. The Clerk scheduled the First Meeting of Creditors for June 23, 2010. The notice filed by the Clerk advised that creditors were not to file proofs the initial filing.  Thereafter, on June 4, 2010, the Debtor filed some but not all of the schedules required by the Court. The amended schedules included listing  D'Agostino as a secured creditor with a claim of $385,399.32. The debt owed to D'Agostino was a business debt as a result of Hecker's malpractice. The debts of the Debtor were primarily business debts associated with the activities of Hecker's law practice. The docket reveals that not all of the missing portions of the petition were filed by the Debtor and the First

Meeting of Creditors was adjourned to July 28, 2010. Because the Debtor did not file an amended creditor matrix, D'Agostino was not on the list of creditors who received notice from the Clerk. However, D'Agostino was aware of the bankruptcy case because he contacted the Court in July 2010 at which time he was told the bankruptcy case was scheduled to be dismissed. On July 20, 2010, prior to the First Meeting of Creditors, the Court dismissed the case based upon the Debtor's failure to file his Statement of Financial Affairs, Notice to Individual Consumer Debtors under §343(b), and Statement of Current Income and Means Test.  D'Agostino received an email from Judge Lyons' Court Room Deputy on July 23, 2010 which attached a copy of the Debtor's petition, the Debtor's amended schedules and the Order of Dismissal. (D'Agostino certification filed March 3, 2020, Exhibit B). As a result of the Court's dismissal of the case on July 20, 2010, Atkinson was no longer the Trustee.  A Final Decree was entered on July 26, 2010.

On September 1, 2020, Karen Bezner, Esq., representing Hecker, filed a Notice of Motion to reopen the case to enable the Debtor to file the  missing documents and reinstate the case.  Bezner did not serve a copy of the motion to reopen on D'Agostino. At the time of the filing of the motion to reopen, Atkinson was not the Trustee because the case had been closed on July 26, 2010.  The Court entered an Order granting the Debtor's motion to reopen the case on September 20, 2010.  On September 21, 2010 the Clerk filed a Notice of the Chapter 7 case, set the

8

date for the First Meeting of Creditors, and advised creditors not to file proofs of claim at that time because it did not appear that there were any assets available for the Trustee to pay creditors. Following the reopening of the case on September 20, Atkinson was reappointed as the Trustee on September 21, 2010. The First Meeting of Creditors was scheduled by the Clerk for October 25, 2010. The missing documents including the Statement of Financial Affairs and Certification in Lieu of Means Test Data prepared by Bezner Esq, were filed on October 1, 2010. The Debtor did not amend his creditor matrix.

The Trustee has no independent recollection of the First Meeting of Creditors that took place in October 2010. Additionally, he had no file to review for this no asset Chapter 7 case because files for no asset cases can be destroyed two years following the date of the discharge of the Trustee from his or her duties. The Trustee was discharged from his duties upon the filing of his No Distribution Report on February 8, 2011. Atkinson inquired of the Office of the United States Trustee whether there was a tape or disk of the First Meeting of Creditors. The Office of the United States Trustee did not have a tape or disk of the October 2010 First Meeting of Creditors because the Office of the United States Trustee does not retain copies of First Meeting of Creditors longer than two years.

In opposition to D'Agostino's motion, Atkinson filed certifications detailing his actions in all bankruptcy cases. Atkinson has been a Trustee for approximately

40 years. At every First Meeting of Creditors, Atkinson asks the debtor detailed questions regarding the petition and assets. Each debtor provides proof of identification consisting of a photo ID, and proof of social security number. The debtor is then sworn in, asked whether the information contained in the petition is true, and whether there are additions, deletions, corrections or omissions. Atkinson asks the debtor if he or she owns the home in which they reside. If they own a home Atkinson inquires about the mortgage and liens on the property, and whether the mortgage is current. He also inquires whether they have ever owned the home and whether they have owned any real property during the proceeding four years. He also asks whether they have transferred any property to any family member or friend during the last 4 years other than normal holiday or birthday gifts, whether they have transferred any personal property to a creditor in the last year, whether anyone is holding any real or personal property in trust for them, whether anyone owes them money, whether they have stocks or bonds, whether they have a right to sue anyone for injuries to themselves or property, whether they have life insurance with a cash value, whether they own any annuities, IRAs, 401K, 403Bs, pensions and whether they have overfunded any pension vehicle. Atkinson also asks whether they have owned a business in the last six years, and if they are no longer in business what happened to it and its assets. If the debtor is in business, Atkinson inquires whether it is a sole proprietorship, LLC, partnership or corporation. He then asks for copies

of the business tax return unless it is a sole proprietorship and included in the Debtor's personal return. Hecker was a sole proprietor of his law firm. All debtors are required to provide copies of their most recent Federal Income Tax Return to Atkinson. The First Meeting of Creditors is not closed by Atkinson until then tax return is provided to him. A No Distribution Report (NDR) is not filed until the documentation is provided. See Atkinson Certifications, Docket Entry 41 para. 5-14 and Docket Entry 40, paragraphs 17-18.

Following the First Meeting of Creditors, the Trustee filed a Notice of Information for Abandonment of Property for the Debtor's real property located at 109 Division Street, Toms River, New Jersey. The Notice of Abandonment was filed on December 22, 2010. Docket Entry 29. According to the Debtor's petition, the real property was valued at $150,000.00. The real property was encumbered by a first mortgage with a balance due of $103,000.00 by America's Servicing, and there were judgment liens held Steven Bess for $705,641.95, Steven D'Agostino for $385,399.32, Summit Bank for $8,800.00 and M. Reichman and A. Lazaroff for the sum of $9,566.37. Additionally, Schedule E listed a debt owed to the Internal Revenue Service for $54,527.48. Docket Entry 10.

No objections to the abandonment of the real property which had no equity were filed. The Clerk then filed a Certification of no objection to the abandonment of the property. As a result of the abandonment of the property, it was no longer an

asset of the Debtor Estate to be administered by the Trustee. All of the liens remained on the property and nothing precluded D'Agostino from enforcing his judgment lien. Trustee Report of No Distribution on February 8, 2011. As a result, the Trustee was discharged from his duties. Thereafter, the Court closed the case and entered its Final Decree on March 16, 2011. The Hecker case was an individual Chapter 7, no asset case, and the Trustee never took possession of any of the Debtor's personal property, and did not operate the Debtor's business. Docket Entry 40 Paragraph 25. D'Agostino claims that he was unaware of the reinstatement of the bankruptcy case until a September 2013 conversation which he had with Hecker. Following his conversation with Hecker, D'Agostino did not seek to re-open the case. He claims that he spoke to a collection attorney who advised him that his judgment was still of record. D'Agostino does not assert he made any effort to enforce his judgment lien during the next 4 years until 2017 after he learned that Hecker had died. He states that he then contacted a collection attorney to proceed against the Hecker property, however the bank had foreclosed on the property in October 2017. D'Agostino claims he then searched the house and discovered files belonging to Hecker which he contends evidence that Hecker had hidden assets during his bankruptcy. The exhibits attached to D'Agostino's certifications in support of his motion for leave to pursue claims against the Trustee do not include any evidence of such assets. Rather the exhibits are some bank statements, deposit records, and checks paid from

Hecker's Attorney Business account pre-petition, evidence of a post petition IRA with less than $5,000 in it and bank statements more than a year after the closing of the case. IRAs are not assets of a Debtor Estate.

Prior to filing his motion seeking the Bankruptcy Court's approval to file a complaint against the Trustee in the Superior Court, D'Agostino, filed an Amended Complaint in the Superior Court of New Jersey entitled *Steven D'Agostino v. Karen Bezner, Esq. and Bunce Atkinson, Esq.*, Superior Court of New Jersey, Law Division, Civil Part, Ocean County, Docket No. OCN-L-2326-19. The Amended Complaint naming the Trustee as a defendant is dated October 25, 2019. The Amended Complaint was hand delivered to the law office of Atkinson & DeBartolo, P.C. and given to a secretary on January 16, 2020.

Following the delivery of the Amended Complaint to the Trustee's office on January 16, 2020, Maxwell L. Billek, Esq., of the Law Firm of Wilson, Elser, Moskowitz, Edelman & Dicker, filed a Notice of Motion on behalf of the Trustee in the Superior Court of New Jersey to dismiss the complaint for lack of subject matter jurisdiction because D'Agostino failed to obtain approval of the United States Bankruptcy Court prior to filing a complaint in the Superior Court against the former Trustee. Only after Atkinson's attorney filed a motion to dismiss in the Superior Court did D'Agostino seek the approval of the Bankruptcy Court to pursue a claim against Atkinson.

## SUMMARY OF ARGUMENT

The Bankruptcy Court correctly determined that D'Agostino did not establish that he should be permitted to pursue the Trustee in the Superior Court of New Jersey for claims of gross negligence, tortious interference, and breach of fiduciary duties. The findings of fact by the Court are supported by the record that and are not clearly erroneous. The Court found that the Trustee acted reasonably and that D'Agostino did not present evidence of a prima facie case. The Court correctly applied its finding of facts to the law, including the Barton Doctrine and qualified immunity in denying D'Agostino's motion to pursue a lawsuit against the Trustee. The Court did not abuse its discretion.

## ARGUMENT

## I.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING D'AGOSTINO'S MOTION TO PURSUE CLAIMS IN THE SUPERIOR COURT OF NEW JERSEY AGAINST THE TRUSTEE

The Barton Doctrine as set forth in <u>Barton v. Barbour</u> 104 <u>U.S.</u> 126 (1881) held that "before suit is brought against a receiver, leave of the court by which he was appointed must be obtained. The Third Circuit, in <u>In Re Vista Care Group v. Schwab</u> 678 <u>F.3d</u> 218 (3rd Cir. 2012), determined that a party is required to obtain an order

from the Bankruptcy Court before bringing an action against a Trustee in another forum.  The Court stated:

> The first question presented by this case is whether a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity. We now join our sister circuits in holding that, under the doctrine established in *Barton v. Barbour,* leave of the bankruptcy court is required before instituting such an action. *See, e.g., Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir.2009) (holding that the *Barton* doctrine is applicable to bankruptcy trustees); *In re Crown Vantage, Inc.,* 421 F.3d 963, 970 (9th Cir.2005) (same); *Muratore v. Darr,* 375 F.3d 140, 143 (1st Cir.2004) (same); *In re Linton,* 136 F.3d at 545–46 (same); *In re Lehal Realty Assocs.,* 101 F.3d 272, 276 (2d Cir.1996) (same); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993) (same); *Anderson v. United States,* 520 F.2d 1027, 1029 (5th Cir.1975) (same).[2]

> Established by the Supreme Court over a century ago, the *Barton* doctrine provides that "before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." 104 U.S. at 128 (citing *Davis v. Gray,* 83 U.S. 203, 16 Wall. 203, 21 L.Ed. 447 (1872)).  Id at p. 224

D'Agostino has not appealed the Court's decision that the Barton Doctrine applies, but rather that the Court did not apply the Doctrine correctly. Not only must a party seeking to sue a Trustee first obtain an order from the United States Bankruptcy Court for authorization, but the party must also make a *prima facie* case against the Trustee showing that the claim is not without foundation.  In Vistacare Group, supra, the Court stated:

> A party seeking leave of court to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation." *In re Nat'l Molding Co.,* 230 F.2d at 71 (citations omitted). Although, as CGL observed at oral argument, the "not without foundation" standard is similar to the standard courts employ when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we emphasize that the former

15

involves a greater degree of flexibility. *Compare* *Barefoot Architect, Inc. v. Bunge,* 632 F.3d 822, 826 (3d Cir.2011) ("To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain **\*233** sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' ") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)), *with In re Nat'l Molding Co.,* 230 F.2d at 71. Reviewing courts should accord significant deference to the determinations of the bankruptcy court, which, given its familiarity with the underlying facts and the parties, is uniquely situated to determine whether a claim against the trustee has merit. Id at. P232-233.

Unlike the Hecker case, Vistacare had assets available for the trustee to sell. In Vistacare the Debtor Estate consisted of 45 lots. 44 lots were subdivided and zoned for mobile homes. The 45 lot contained a four story retirement and assisted living facility. A recorded subdivision plan contained a restriction precluding the sale of lots to parties having residences constructed upon them. The Trustee sold to CGL, LLC the lot on which the four story retirement home and assisted living facility were located. While selling the other 44 lots, notwithstanding the restriction, the trustee entered into agreements and sold lots to residents who had permanently affixed homes to the lots. CGL then sought leave to file a complaint against the trustee in state court to allege that the sales of the individual lots were unlawful and that the sales had damaged CGL as the owner of Lot 45. The trustee opposed the motion which was granted and affirmed by the District Court. On appeal the Third Circuit Court stated:

> In this case, the Bankruptcy Court did not abuse its discretion in concluding that CGL had met its burden of establishing that its claims against the Trustee were "not without foundation." CGL's motion for leave alleged that (1) "[t]he sales of individual lots in violation of Restriction No. 1 [were] unlawful and ... caused damage to CGL's property interests in Lot 45" and (2) the agreement

between the Trustee and the Township was "an attempt to deprive CGL of its
property rights without notice and without due process of law." Although
CGL's motion did not specify a particular state law cause of action, as the
Bankruptcy Court observed, the proposed state court action would be a
property dispute involving the status of Restriction No. 1, and whether the
owner of a lot in the subdivision could enforce the restriction against another
owner. Id a p 233.

The Court in discussing whether the Bankruptcy Court abused its discretion in
permitting CGL to file a state court complaint stated:

> Under the deferential abuse of discretion standard, we will reverse "only where the
> ... court's decision is arbitrary, fanciful, or clearly unreasonable—in short, where
> no reasonable person would adopt the ... court's view." _United States v. Green,_
> _617 F.3d 233, 239 (3d Cir.2010)_ (internal marks and citation omitted). Id at p. 232.

In <u>Vistacare</u> evidence had been produced that a restriction on the deeds had
been recorded, there was a legitimate disagreement on the status of the restrictions,
that a state court would probably have expertise in the area, and that the state court
would be the appropriate forum to resolve the dispute. at p. 233-234. (Internal
citations omitted). This not the situation in the instant matter where D'Agostino
mrely made unsupported conclusions and suppositions.  The Bankruptcy Court did
not abuse its discretion in determining that D'Agostino did not establish a prima
facie case before it that Atkinson in performing his duties as the Trustee violated any
statutory rights of D'Agostino or acted negligently causing D'Agostino damage.

In its decision denying D'Agostino's motion to pursue claims in State Court,
the Bankruptcy Court cited <u>Pearson v. Callahan</u> 555 U.S. 223 (2009) citing <u>Harlow</u>
<u>v. Fitzgerald</u>, 457 <u>U.S.</u> 800 (1982), which determined that the Doctrine of Qualified
Immunity protects government officials from liability for civil damages insofar as
their conduct does not violate the established statutory or constitutional rights of

which a reasonable person would have known. In <u>Pearson</u>, the Court set forth the purpose of qualified immunity stating:

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial."
> <u>Mitchell v. Forsyth,</u> 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery." Id at p. 231.

The Bankruptcy Court determined that Chapter 7 Trustees are government officials entitled to the protections under Harlow citing In <u>J & S Properties, LLC, Debtor, Phoenician Mediterranean Villa, LLC v. Swope</u>, 72 <u>F.3d</u>, 138 (3rd Cir. 2017). In <u>Swope</u>, the Court discussed the purpose of qualified immunity and what must be shown to overcome a Trustee's qualified immunity. It stated:

> Qualified immunity, "properly applied, protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (citation omitted). "To overcome qualified immunity, a plaintiff must plead facts 'showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.' " *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–69 (3d Cir. 2016), *cert. denied*, —— U.S. ——, 137 S.Ct. 161, 196 L.Ed.2d 121 (2016) (quoting *al-Kidd*, 563 U.S. at 735, 131 S.Ct. 2074). And an official's conduct violates clearly established law if "there [is] sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that ... her conduct is constitutionally

prohibited." *McLaughlin v. Watson* , 271 F.3d 566, 572 (3d Cir. 2001). Such precedent must come either from the Supreme Court or a " 'robust consensus of cases of persuasive authority' in the Court of Appeals." *Mammaro* , 814 F.3d at 169 (quoting *Taylor v. Barkes* , ——U.S. ——, 135 S.Ct. 2042 2044, 192 L.Ed.2d 78 (2015) (per curiam)).

*Id.* at p.143

D'Agostino argues that the Trustee Handbook in effect in 2010 required Atkinson to check the accuracy of the notice matrix. This is not a statutory duty of a Trustee and even if checked did not require the Trustee to contact creditors. As D'Agostino writes, the Bankruptcy Court noted that the Handbook contains "guidelines, not statutes". D'Agostino infers that the Court in Swope determined that she was entitled to qualified immunity because she followed the Handbook. In fact the decision was based upon her following the requirements of 11 U.S.C. 704(a) in taking control of debtor estate property. The Court did note that the Handbook is guidance for a trustee to take control of property if it appears to have value. Swope at p. 144. In the instant matter, the Bankruptcy Court correctly applied the facts to the law in determining that Atkinson is entitled as a Chapter 7 Trustee to qualified immunity, and is immune from suit unless he violated a constitutional right or statutory right, and the right was clearly established at the time of the challenged conduct. The Court in applying the facts to the principle of qualified immunity in its supplemental statement of reasons attached to the April 3, 2020 Order noted that "D'Agostino's position highlights the need for qualified immunity for Chapter 7

Trustees." The Court found Atkinson's actions as trustee were reasonable, citing the procedures that Atkinson follows for his review of Chapter 7 cases. Nothing in the certifications filed by D'Agostino or in his Amended Complaint set forth any facts that Atkinson's conduct was plainly incompetent or that he knowingly violated the law. Atkinson did not violate any constitutional right of D'Agostino nor any statutory right of D'Agostino.

D'Agostino vaguely and erroneously claims he was deprived of this 14th amendment rights because the Atkinson did not notify him of the Hecker bankruptcy proceeding. Nothing in the Bankruptcy Code makes notification of the filing of a petition the duty of the Trustee and it is not a Constitutional right that Atkinson deprived D'Agostino of. The Court correctly analyzed, that the Debtor is required to prepare and file the list of creditors, the list of assets and liabilities, the statement of financial affairs, and the statement of income and expenses. See 11 U.S.C. 521(a)(1). If the Debtor files an amendment to the petition it, is the Debtor and or the Debtor's attorney that is required to send the notice to any added creditor. Moreover, under Bankruptcy Rule 2002(a)(1), the Bankruptcy Clerk provides notice of the filing of the petition and the date for the first meeting of creditors, not the Trustee. The notice is sent to those creditors listed by the Debtor. D'Agostino mistakes duties of Atkinson as a panel Trustee with the duties of the United States Trustee. Pursuant to 11 U.S.C. 707(a)(3), if a debtor does not file the information

required under 11 U.S.C. 521(a)(1), the Court can dismiss the case, but only on motion of the United States Trustee. Atkinson was not and is not the United States Trustee.

Even if qualified immunity did not apply to the Trustee, D'Agostino does not make a *prima facie* case against the Trustee showing that there is valid foundation for his claim as required by Barton and its progeny. D'Agostino's complaints against the Trustee arise out of the actions of the Trustee between September 21, 2010, and until February 8, 2011 when the Trustee filed his NDR. According to D'Agostino's Amended Complaint, he was aware of Hecker's bankruptcy in the summer of 2010, and was aware that it was dismissed on July 20, 2010 (see paragraph 10 of Amended Complaint). D'Agostino did not certify that he took any actions to attempt to collect or enforce the judgement he had obtained after July 20, 2010 or in 2011 or 2012. In paragraph 11 of the Amended Complaint and paragraph 21 of his certification, D'Agostino claimed that he became aware of the bankruptcy in September 2013 when he went to Hecker's home and Hecker advised him of the bankruptcy. According to D'Agostino's certification, he had contacted Peter Regan, Sr., a debt collection attorney in the summer of 2013. N.J.S.A.14A-1 provides a six (6) year statute of limitations to institute an action for malpractice, negligence, breach of fiduciary duty, or tortious interference with prospective economic advantage. Vastano v. Algeir, 178 N.J. 230, 236, provides that a legal malpractice

action is required to be commenced within six (6) years of the a accrual of the cause of action. In the instant matter, any accrual of a cause of action occurred in 2010. The only negligence complained of in Count 2 of D'Agostino's amended complaint is that Atkinson failed to send him a copy of the motion filed by Bezner in September 2010, which was prior to Atkinson's appointment as the Trustee. Clearly there is no foundation for a claim of negligence. New Jersey Courts have determined that a cause of action for tortious interference with prospective economic advantage must be brought within six (6) years of the accrual of the cause of action. See A.C. Capital Management, LLC 450 ( 1, (67, App. Div. 2017). Regarding tortious interference with prospective economic advantage, nothing in the Amended Complaint sets forth any action taken by Atkinson to interfere with any protectable right, a prospective economic or contractual relationship between D'Agostino and Hecker. In Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739 (1989), the New Jersey Supreme Court stated:

> A complaint based on tortious interference must allege facts that show some protectable right--a prospective economic or contractual relationship. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some "reasonable expectation of economic advantage." Harris v. Perl, supra, 41 N.J. at 462, 197 A.2d 359. A complaint must demonstrate that a plaintiff was in "pursuit" of business. Second, the complaint must allege facts claiming that the interference was done intentionally and with "malice." Louis Kamm, Inc. v. Flink, supra, 113 N.J.L. at 588, 175 A. 62; Kopp, Inc. v. United Technologies, Inc., 223 N.J.Super. 548, 559, 539 A.2d 309 (App.Div.1988); Levin v. Kuhn Loeb & Co., 174 N.J.Super. 560, 573, 417 A.2d 79 (App.Div.1980) (applies New York law). For purposes of this tort, "[t]he term malice is not used in the literal sense requiring ill will toward the plaintiff."

Restatement (Second) of Torts Chapter 37 at 5 (introductory note) (1979). Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563, 117 A.2d 889 (1955). Third, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain. A plaintiff must show that "if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." Leslie Blau Co. v. Alfieri, 157 N.J.Super. 173, 185-86, 384 A.2d 859 (App.Div.), certif. denied sub nom. Leslie Blau Co.

v. Reitman, 77 N.J. 510, 391 A.2d 523 (1978). Fourth, the complaint must allege that the injury caused damage. Norwood Easthill Assocs. v. Norwood Easthill Watch, 222 N.J.Super. 378, 384, 536 A.2d 1317 (App.Div.1988).

There are no facts in the Amended Complaint which allege that in the pursuit of D'Agostino's dealings with the Debtor Hecker that Atkinson interfered with him. There are no allegations that Atkinson interfered with any relationship between Hecker and D'Agostino intentionally and with malice.

## CONCLUSION

The Bankruptcy Court did not abuse its discretion in denying D'Agostino's motion to pursue an action against Atkinson in the Superior Court of New Jersey for Atkinson's actions as the Trustee in the Hecker 2010 Chapter 7 bankruptcy. The findings of fact by the Bankruptcy Court that Atkinson acted reasonably in the performance of his duties is not clearly erroneous. The Court correctly determined that in accordance with Barton Doctrine that D'Agostino did not set forth facts that made a prima facie case against the Trustee. There were no violations of constitutional rights by the Trustee. No case law has been cited by D'Agostino to

establish that Atkinson violated his constitutional rights.  Atkinson did not affect D'Agostino's judgment lien which remained on the property that Atkinson abandoned or stop D'Agostino from enforcing his judgment lien.  Atkinson did not violate any known statutory rights of D'Agostino. The Court correctly applied the facts in determining that Atkinson is entitled to qualified immunity from suit. The Bankruptcy Court did not abuse its discretion and its decision should be affirmed.

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. BANKR. P. 8015(a)(7)(B)(i)

I certify that the foregoing Brief of Appellee Bunce Atkinson, complies with the limitation imposed by Fed. R. Bankr. P. 8015(a)(7)(B)(i) as it contains 5,983 words according to Microsoft Word's word count function, exclusive of the cover sheet, Table of Contents, Table of Authorities, date, and signature block, certificate of Compliance with Fed. R. Bankr. P. 8015(a)(7)(B)(i) and Certificate of Service.

/s/Bunce D. Atkinson, Esq

Bunce D. Atkinson, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020 the Brief of Appellee Bunce Atkinson was served upon the following parties in the manner below.

Steven D'Agostino, Appellant Pro Se

Email: info@stevedagostino.biz, wehaveagig@hotmail.com

Regular U.S. mail

Steven D'Agostino

25 Nautilus Drive

Barnegat, N.J. 08005

/s/ Bunce D. Atkinson                          Date: 10-16-20

BUNCE D. ATKINSON